UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. |
| v. | * | SECTION: |
| $100,641.06 U.S. CURRENCY SEIZED FROM RESOURCE BANK ACCOUNT NUMBER: 1133164, IN THE NAME OF CALVIN THIBODAUX; | * * | |
| $20,800 U.S. CURRENCY SEIZED FROM BERRYLAND CAMPERS FOR THE PURCHASE OF A 2013 ROCKWOOD TRAILER; | * * * | |
| 2013 NISSAN ALTIMA, BEARING VEHICLE IDENTIFICATION NUMBER: 1N4AL3AP1DN478757; | * * | |
| 2001 CHEVROLET SILVERADO PICKUP TRUCK, BEARING VEHICLE IDENTIFICATION NUMBER: 2GCEC19T311359395; | * * * | |
| 2012 KUBOTA TRACTOR WITH PARKER TRAILER; | * | |
| | * * * | |

## COMPLAINT FOR FORFEITURE IN REM

NOW INTO COURT, through the undersigned Assistant United States Attorney, comes plaintiff, the United States of America, and respectfully avers and alleges to this Court as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

1.

This Honorable Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

2.

Venue is proper within this judicial district pursuant to Title 28, United States Code, Sections 1355 and 1395.

3.

The plaintiff is the United States of America, a sovereign nation authorized to sue.

4.

The *in rem* defendants are:

$100,641.06 U.S. Currency seized from Resource Bank Account Number: 1133164, in the name of Calvin Thibodaux;

$20,800 U.S. Currency seized from Berryland Campers for the purchase of a 2013 Rockwood Trailer;

2013 Nissan Altima, bearing Vehicle Identification Number: 1N4AL3AP1DN478757;

2001 Chevrolet Silverado Pickup Truck, bearing Vehicle Identification Number: 2GCEC19T311359395;

2012 Kubota Tractor with Parker Trailer;

5.

This cause of action arises pursuant to Title 18, United States Code, Section 981, *et seq*.

6.

The *in rem* defendant properties constitute or are derived from proceeds traceable violations of Title 18, United States Code, Sections 1343, 1344 and 1349, and are, therefore, subject to seizure and forfeiture to the United States pursuant to Title 18, United States Code,

Sections 981(a)(1)(C) and 981(a)(1)(D), all as more particularly set forth in the attached affidavit of Special Agent Ricky J. Rauch, Jr., of the United States Secret Service, marked Exhibit "A" and by this reference fully incorporated herein.  As more fully set forth in Exhibit A, the *in rem* defendant property constitutes proceeds of Wire Fraud, in violation of 18 U.S.C. § 1343, and/or Bank Fraud, in violation of 18 U.S.C. § 1344.

**7.**

Additionally, the *in rem* defendant properties were involved in transactions or attempted transactions of money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(B), 1956(h), and 1957 and are, therefore, subject to seizure and forfeiture to the United States, all as more particularly set forth in the attached affidavit of Special Agent Ricky J. Rauch, Jr., of the United States Secret Service, marked Exhibit "A," and by this reference fully incorporated herein.  18 U.S.C. § 981(a)(1)(A).  More specifically, and in addition to the fact that the *in rem* defendant properties are separately forfeitable under Wire Fraud and/or Bank Fraud, the properties were involved in transactions designed to conceal the true nature, source, and ownership of the funds.  18 U.S.C. § 1956(a)(1)(B)(i).  Both Wire Fraud and Bank Fraud constitute "specified unlawful activit[ies]," as defined by 18 U.S.C. § 1956(c)(7)(A).  18 U.S.C. § 1961(1).

**8.**

By reason of the foregoing and Title 18, United States Code, Sections 981(a)(1)(A), 981(a)(1)(C), 981(a)(1)(D), and 981(f), the *in rem* defendant properties identified in Paragraph 4, *supra*, have become and are forfeited to the United States of America. The instant *in rem* proceeding has been initiated, seeking recognition of same.

**WHEREFORE**, plaintiff, United States of America prays:

1. That due process issue to enforce the forfeiture and to give notice to interested parties to appear and show cause why the forfeiture should not be decreed;

2. That the defendants:

>$100,641.06 U.S. Currency seized from Resource Bank Account Number: 1133164, in the name of Calvin Thibodaux;
>
>$20,800 U.S. Currency seized from Berryland Campers for the purchase of a 2013 Rockwood Trailer;
>
>2013 Nissan Altima, bearing Vehicle Identification Number: 1N4AL3AP1DN478757;
>
>2001 Chevrolet Silverado Pickup Truck, bearing Vehicle Identification Number: 2GCEC19T311359395;
>
>2012 Kubota Tractor with Parker Trailer;

be condemned and forfeited to the United States of America to be disposed of in accordance with law; and

3. That this Court grant such other further relief that it may deem just and proper.

>Respectfully submitted,
>
>DANA BOENTE
>UNITED STATES ATTORNEY
>
>/s/ Andre J. Lagarde
>_____
>ANDRE J. LAGARDE, T.A.
>Assistant United States Attorney
>650 Poydras Street, Suite 1600
>New Orleans, LA  70130
>Telephone: (504) 680-3009
>La. Bar Roll No. 28649
>Andre.Lagarde@usdoj.gov

**PLEASE ISSUE AND SERVE
WARRANTS OF ARREST ON:**

$100,641.06 U.S. Currency seized from Resource Bank Account Number: 1133164, in the name of Calvin Thibodaux;

$20,800 U.S. Currency seized from Berryland Campers for the purchase of a 2013 Rockwood Trailer;

2013 Nissan Altima, bearing Vehicle Identification Number: 1N4AL3AP1DN478757;

2001 Chevrolet Silverado Pickup Truck, bearing Vehicle Identification Number: 2GCEC19T311359395;

2012 Kubota Tractor with Parker Trailer;

**Located at:**
UNITED STATES SECRET SERVICE
One Lakeway Center
3900 N. Causeway Blvd., Suite 1400
Metairie, LA  70002

## **VERIFICATION**

I, Ricky J. Rauch, Jr., hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Secret Service, that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the United States Secret Service.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated this 26th of August, 2013.

_____
RICKY J. RAUCH, JR., SPECIAL AGENT
United States Secret Service

| | | |
|---|---|---|
| STATE OF LOUISIANA | ) | |
| | ) | AFFIDAVIT OF Ricky J. Rauch, Jr. |
| Parish of Orleans | ) | |

I, Ricky Joseph Rauch, Jr., first being duly sworn, depose and state:

      1.    That I am a Special Agent with the United States Secret Service ("USSS") and have been employed as a Special Agent for approximately five years. During the course of my employment, I have conducted numerous investigations of financial fraud, bank fraud, embezzlement, identity theft, and violations of Title 18, United States Code. I have also been involved in the investigation of asset forfeiture as it relates to specific cases to which I was assigned.

      2.    Your affiant is the USSS case agent in charge of investigating a case of fraud related to elder exploitation. To date, the investigation has revealed that a caretaker and her husband have, via power of attorney and other fraudulent mechanisms, defrauded a hospitalized elderly man. On March 26, 2013, your affiant was contacted by Detective Stefan Montgomery of the St. Tammany Parish Sheriff's Office, a Task Force Officer (TFO) for the USSS Financial Crimes Task Force, regarding a case of elder exploitation. The complainants, identified as George and Forest Dobronich, were concerned for the financial wellbeing of their uncle, Sidney Dobronich ("Mr. Dobronich"). The complainants had recently been contacted about a series of large and unusual withdrawals from Mr. Dobronich's brokerage account. Mr. Dobronich is an eighty-five year old male, who is the apparent victim of the scheme more fully set forth herein and who lives alone. Mr. Dobronich has neither children nor a spouse. At the time of the complaint, Mr. Dobronich was in St. Tammany Hospital, recovering from a hip fracture after suffering a fall inside his residence.

      3.    Detective Montgomery then contacted Romano Investments and Insurance in Bogalusa, Louisiana and learned that Mr. Dobronich had a large amount of money invested into a brokerage account. Over the past two years, Romano Investments had wired a monthly electronic deposit of $1,200.00 into Mr. Dobronich's Capital bank account (account number ******1720) for living expenses. On February 13, 2013, Romano Investments was contacted by DARNAY THIBODAUX, who identified herself as Mr. Dobronich's neighbor and caretaker. She claimed to have power of attorney for Mr. Dobronich and requested $30,000 to settle his medical expenses. Mr. Dobronich was in the hospital at this time after suffering heart problems. Joe Romano spoke with Mr. Dobronich directly by phone before authorizing the transfer. On February 20, 2013, DARNAY THIBODAUX presented a power of attorney and last will and testament to Romano Investments, showing that she had full authority and that all of Mr. Dobronich's assets were being willed to her upon his death. Thibodaux stated that additional medical bills had come due and requested an additional $30,000 transfer to the same Capital One

AFFIDAVIT OF SA RICKY J. RAUCH, JR.    PAGE 1                     Exhibit "A"

account. On March 5, 2013, DARNAY THIBODAUX contacted Romano Investments and requested a transfer of $179,000 to the Capital One account for the purchase of a home. Romano became suspicious and demanded to speak to Mr. Dobronich, who was not immediately available. Upon callback, Mr. Dobronich told Romano they were "looking at a home" and authorized the transfer. Romano has since reported to law enforcement officers that he heard DARNAY THIBODAUX in the background telling Mr. Dobronich what to say. On March 11, 2013, DARNAY THIBODAUX called Romano Investments again, requesting an additional $95,000 for closing costs. Joe Romano transferred the money but, because of his concerns, sought out one of Mr. Dobronich's family members. Ultimately, Mr. Romano reached Mr. Dobronich's nephews, who are the complainants in the underlying criminal investigation.

      4.      On March 12, 2013, Mr. Dobronich was re-admitted to St. Tammany Hospital with a fractured hip. The complainants then met with DARNAY THIBODAUX, who gave conflicting statements about why she had needed to spend $334,000 of Mr. Dobronich's funds over the course of just one month. Suspicious of the activity, they contacted the St. Tammany Parish Sheriff's Office for assistance.

      5.      On March 18, 2013, Detective Montgomery met with Mr. Dobronich at St. Tammany Parish Hospital. During the interview, Mr. Dobronich appeared alert and oriented. Mr. Dobronich confirmed that he knew the THIBODAUXS and stated that he was selling them his property for $500 per month; however, they were behind on the payments. Mr. Dobronich then stated that the Thibodaux's checked on him, but he preferred to live alone and took care of himself. Mr. Dobronich denied giving permission to DARNAY THIBODAUX, or anyone else, to borrow money, handle his finances, or make any transactions on his behalf. Mr. Dobronich did not remember making any large withdrawals from Romano Investments and did not remember granting DARNAY THIBODAUX power of attorney. He recalled only that DARNAY THIBODAUX provided him "a bunch of paperwork to sign." When asked about a $30,000.00 withdrawal, he stated he called "Joe" (Romano) to settle his hospital bill. He did not remember any other transactions and appeared confused about recent details. When asked who his beneficiaries were, he named George and Forest Dobronich, his nephews and the complainants in the underlying criminal investigation.

      6.      After reviewing the investment account transfers, Detective Montgomery obtained Mr. Dobronich's Capital One bank account records and determined that most of the money had already been withdrawn in cash or used to purchase large items, including vehicles, a tractor, and real estate. None of the money appeared to be used for the alleged medical expenses or any other purchases attributable to the elderly account holder, Mr. Dobronich. It is also noted that Capital One's server for this region is located in Plano, Texas. Therefore, in order to process transactions such as those discussed herein, an interstate wire transmission is involved. 18 U.S.C. §1343. The following is a timeline of debits from the account:

a. DARNAY THIBODAUX added herself to Mr. Dobronich's bank account via power of attorney; and on February 15, 2013, she made a $3,000.00 withdrawal.

b. On February 16, 2013, DARNAY THIBODAUX made a $7,500.00 withdrawal.

c. On February 20, 2013, DARNAY THIBODAUX obtained a cashier's check in the amount of $26,000.00 payable to CALVIN THIBODAUX with "doctor bills" listed in the memo field. The check was endorsed and deposited on February 20, 2013, by Eddie Tourelle's Northpark Nissan in Covington, LA. The check was furnished for the purchase of a 2013 Nissan Altima sedan, which is registered to DARNAY THIBODAUX at 29145 Nell Drive, Sun, LA.

d. On February 22, 2013, DARNAY THIBODAUX made a withdrawal of $15,000.00.

e. On March 5, 2013, DARNAY THIBODAUX made a withdrawal of $10,000.00.

f. On March 6, 2013, DARNAY THIBODAUX wrote a $400.00 check payable to Christopher Thibodaux.

g. On March 7, 2013, DARNAY THIBODAUX made a withdrawal of $4,500.00.

h. On March 8, 2013, DARNAY THIBODAUX made a withdrawal of $10,000.00.

i. On March 11, 2013, DARNAY THIBODAUX obtained a cashier's check payable to Citizen's Savings Bank for $45,000.00 with "purchase of 29066 Ellis Drive" in the memo field.

j. On March 11, 2013, DARNAY THIBODAUX made a withdrawal of $10,000.00.

k. On March 11, 2013, DARNAY THIBODAUX obtained a cashier's check payable to Evergreen Tractor in Covington for $22,944.31 with "tractor for Calvin and Darnay Thibodaux" in the memo field.

l. On March 13, 2013, DARNAY THIBODAUX made a withdrawal of $50,510.00.

m. On March 13, 2013, DARNAY THIBODAUX made a withdrawal of $29,000.00.

n. On March 13, 2013, DARNAY THIBODAUX obtained a cashier's check payable to CALVIN THIBODAUX for $100,000.00 which was deposited into Resource Bank account #1133164 on the same date. The account is registered to Calvin Thibodaux.

7. DARNAY THIBODAUX made similar debits from Mr. Dobronich's Citizen Saving's bank account, including a February 15, 2013, $10,500.00 check that was signed by Mr. Dobronich. The check was converted to a cashier's check and was used to purchase a Chevrolet truck in the name of CALVIN THIBODAUX, DARNAY THIBODAUX'S husband, at Nationwide Auto Sales in Covington, LA.

8. Further review of Mr. Dobronich's Capital One bank accounts revealed that on March 15, 2013, DARNAY THIBODAUX used a debit card from Mr. Dobronich's Capital One account to make a $500.00 down payment, via phone order, for a "slide out" 2013 Rockwood travel trailer at Berryland Campers, 42775 Pleasant Ridge Road, Ponchatoula, Louisiana, 70454. That same day, she gave the dealership $19,000.00 in cash towards the purchase price. It should be noted that, between February 15, 2013 and March 13, 2013, DARNAY THIBODAUX made $139,510.00 in cash withdrawals from Mr. Dobronich's Capital One bank account. On March 19, 2013, CALVIN THIBODAUX purchased a service contract on the trailer, paying $1,800.00 in cash, and wrote a check from the Resource Bank account of Calvin Thibodaux Jr in the amount of $17,697.93, for the remaining balance of the trailer. This check was written after DARNAY THIBODAUX had deposited a $100,000.00 cashier's check into her husband's Resource Bank account drawn upon Mr. Dobronich's Capital One account (of which the cashier's check was deposited on March 13, 2013). When Berryland representatives attempted to cash the Resource Bank check, the transaction was declined, as a state search warrant had been executed on the account thereby freezing all funds. At this time, Berryland representatives notified the Thibodaux's of the declined check and the Thibodaux's agreed to return the camper for a refund of the $19,000.00 already paid. Berryland then issued a check, dated March 26, 2013, drawn upon their Capital One bank business account, made payable to CALVIN THIOBODAUX and DARNAY THIBODAUX, in the amount of $19,000.00. During the state search warrant of the THIBODAUXS' residence, this check was located in the passenger compartment of CALVIN THIBODAUX's 2001 Chevy truck and was seized as evidence by STPSO.

9. Based upon the preceding information in this case, Detective Montgomery obtained a state search warrant for the THIBODAUX'S residence, 29145 Nell Drive, Sun, LA. On March 27, 2013, St. Tammany Detectives and Financial Crimes Task Force members executed the state search warrant at the THIBODAUX residence. After securing the scene, task force members located the purchased Nissan Altima sedan, Chevrolet truck, and tractor, which were all parked at the THIBODAUX residence. During the search, other items of evidentiary value were located, including Mr. Dobronich's wallet, which was found in the THIBODAUXS' bedroom safe. During a subsequent interview of DARNAY and CALVIN THIBODAUX by SA Rauch and Detective Montgomery, DARNAY THIBODAUX advised that she had been caring for Mr. Dobronich for approximately two years. She admitted to purchasing the vehicles and tractor with Mr. Dobronich's funds. She further advised that all financial transactions were authorized by Mr. Dobronich as "gifts." When questioned by Detective Montgomery as to whether she had paid for any of Mr. Dobronich's medical expenses with his money, DARNAY

THIBODAUX advised she had not, stating, "The bills hadn't come in yet." When advised that Mr. Dobronich stated the purchases were unauthorized, she could not provide any further explanation.

10. Notwithstanding their inability to explain the unauthorized purchases, later that same day, March 27, 2013, with the assistance of a notary public with whom they are friends, the THIBODAUXS went to Mr. Dobronich's hospital room and presented him with a handwritten "affidavit." The assertions of the handwritten affidavit, which is not in Mr. Dobronich's handwriting, contradict all pertinent information provided to law enforcement both by Mr. Dobronich and the THIBODAUXS. The "affidavit" suggests that the motor vehicle and tractor purchases were authorized and expressly represents that Mr. Dobronich "does not want to press charges against Calvin and/or Darnay Thibodaux." Your affiant submits that this affidavit is, among other things, evidence of the THIBODAUXS' consciousness of guilt. Additionally, the presentation of this affidavit to Mr. Dobronich, who was still in the hospital, further demonstrates both Mr. Dobronich's fragile capacity and the THIBODAUXS ability and willingness to continue to exploit this vulnerability for their own personal gain.

11. Upon further investigation of the $45,000 cashier's check for the purchase of 29066 Ellis Drive, Sun, LA, SA Rauch and Detective Montgomery obtained, via the St. Tammany Clerk of Court's office, sales documentation from this transaction. This documentation listed an Act of Donation on March 13, 2013 from Buffie Lynn Crawford Singletary and Charles Singletary to Darnay and Calvin THIBODAUX. The act was notarized by Janet Singletary, a notary employed by Rebecca Crawford. The document did not identify any exchange of funds; and there was no record of the alleged transaction in the Parish public record.

12. On April 2, 2013, Detective Montgomery interviewed Rebecca Crawford regarding her knowledge of this investigation. Crawford stated Mr. Dobronich appeared to be of sound mind and willingly signed all the documents. She stated that, on March 27, 2013, the THIBODAUXS came to her residence visibly upset, stating the police had seized all of their belongings. Based upon the alleged advice of the THIBODAUXS' criminal counsel, Crawford was asked to prepare an affidavit stating that had Mr. Dobronich consented to the transactions. Crawford stated that she went back to the hospital that night and that she handwrote the affidavit. She further stated that Mr.Dobronich did not appear as alert as during their earlier encounters and that he appeared to be in pain. However, she stated Mr. Dobronich read the document and did not ask any questions before signing. Darnay THIBODEAUX was already present in the hospital room when Crawford arrived. When questioned about the Act of Donation between Buffy Singletary and Darnay THIBODAUX, she stated her office prepared the documentation; however, she was under the impression that it was a Cash Sale. Crawford then reviewed the document and agreed it was signed by her employee, Janet Singletary.

13. On April 2, 2013, Detective Montgomery interviewed Janet Singletary regarding this transaction. Initially, Singletary advised that she was aware that the transaction was actually a Cash Sale. However, when Detective Montgomery began recording the interview, per St. Tammany Sheriff's Office protocol, she recanted her earlier statement, saying that she was unsure as to whether the transaction was a Cash Sale or Act of Donation. However, she confirmed that she prepared the documents as an Act of Donation, per the request of the THIBODAUXS and she recalled seeing a check exchanged between the buyer and seller.

14. On April 3, 2013, Detective Montgomery spoke with Buffy Singletary, who also stated the transaction was a cash sale. Singletary was originally told by Calvin THIBODAUX that the money for the sale was from a loan. However, she was later told by Darnay THIBODAUX that the money was from an inheritance from her grandmother's recent death. Singletary further advised that she spoke with Darnay THIBODAUX sometime after the execution of the search warrant on her residence, at which time, THIBODAUX requested Singletary to lie and state that she (Singletary) had previously met Mr. Dobronich (which she had not).

15. On April 4, 2013, SA Rauch, SA Matthew Pedersen, and Detective Montgomery re-interviewed Buffie Singletary regarding her knowledge of this case. She advised that she has known the THIBODAUX'S for years, as they had previously rented property from her, for which they were frequently delinquent on payments. She then advised that sometime on or around March 7, 2013, she was contacted by Calvin THIBODAUX, who advised that he wished to purchase her property, located at 29066 Ellis Drive, Sun, LA, as he had recently received a loan. She stated that they subsequently agreed upon the purchase price of $45,000. On March 7, 2013, Singletary received a text message from Darnay THIBODAUX stating that the purchase could be done through Rebecca Crawford's title company, as THIBODAUX had recently done some transactions with Crawford. Singletary then stated that, upon arriving at the title company for the land transaction on March 13, 2013, she was told that the transaction would be documented as an Act of Donation by Janet Singletary, who explained that it would be documented as such because the THIBODAUX'S were concerned about public records showing their involvement with a cash sale. Present for the transaction were Buffie Singletary, Darnay THIBODAUX, Calvin THIBODAUX, and Janet Singletary. Charles Singletary, husband of Buffie Singletary, was not present, as he had signed the document earlier in the day. At the conclusion of the transaction, Bufffie Singletary advised that Darnay THIBODAUX handed her $500 in cash in the parking lot, stating that it was "for your trip." Singletary then deposited the cashier's check to pay off her mortgage.

16. When questioned about her knowledge of Mr. Dobronich, Singletary stated that she has never met him and was only recently, after the execution of the state search warrant, made aware of his last name by Darnay THIBODAUX. However, on April 2, 2013, Singletary received a text message from Darnay THIBODAUX reading as follows: "Come over right after school just tell them the truth me an u went to mr Sidney's house an he said it was fine to buy the

house its no big deal were not lying an got the papers to prove it." Singletary consented to SA Rauch examining the above text message located on her cellular phone, it read as indicated. When questioned as to how long THIBODAUX had been caring for Mr. Dobronich, Singletary advised that, contrary to what THIBODAUX advised SA Rauch during the search warrant, stating that she had been caring for him for approximately two years, THIBODAUX had only been caring for Mr. Dobronich for several months. Singletary further advised that on April 4, 2013, she was contacted by Christina Penton, daughter of Darnay THIBODAUX, who advised that she believed her mother was "stealing an old man's money." Singletary then consented to placing several monitored and recorded telephone calls to Darnay THIBODAUX and Calvin THIBODAUX. During her conversation with Darnay THIBODAUX, Singletary advised THIBODAUX that she was uncomfortable lying to law enforcement about meeting Mr. Dobronich if she was questioned regarding this investigation. THIBODAUX advised "I would do it for you." During a conversation with Calvin THIBODAUX, Singletary further advised that she was uncomfortable about potentially lying to law enforcement, to which he advised that he'd appreciate it if she lied.

17. On April 4, 2013, SA Rauch, SA Pedersen, and Detective Montgomery interviewed Christina Penton, daughter of Darnay THIBODAUX, regarding her knowledge of this investigation. She advised that sometime on or around the end of January 2013, she was contacted via telephone by her mother, who advised that while cleaning Mr. Dobronich's residence, she located a bank statement indicating that he had approximately $800,000 in his bank account. She was later contacted on February 6, 2013, via telephone by her mother, who questioned Penton about various pain pills and medications. When questioned as to how long THIBODAUX had been caring for Mr. Dobronich, Ms. Penton advised that THIBODAUX had been caring for Mr. Dobronich only several months, contrary to what THIBODAUX advised SA Rauch during the search warrant, as she indicated she had been caring for him for approximately two years.

18. Your affiant is aware of the fact that, in connection with the aforementioned circumstances, on June 5, 2013, DARNAY and CALVIN THIBODAUX were charged with Exploitation of the Infirmed in violation of La. R.S. 14:93.4. *See State of Louisiana v. Thibodaux*, 22nd JDC, Docket No. 534840, Div. "C." On June 12, 2013, the THIBODAUXS were arraigned on these felony charges and entered pleas of not guilty. The matter is presently set for trial on December 16, 2013. Additionally, your affiant is aware of the fact that the complainants have an open civil lawsuit (Revocatory Action) regarding the underlying fraud and exploitation. *Forrest Dobronich, et al. v. Darnay Thibodaux, et al.*, 22nd JDC, Civ. No. 2013-11784.

19. Based on the foregoing facts, your affiant believes and avers that the defendant properties constitute proceeds of the scheme to defraud Mr. Dobronich and financial institutions, in violation of Title 18, United States Code, Sections 1343, 1344, and 1349 and are, therefore, subject to forfeiture. Additionally, your affiant suggests that the aforementioned properties are

AFFIDAVIT OF SA RICKY J. RAUCH, JR.     PAGE 7                              Exhibit "A"

forfeitable based upon its involvement in Money Laundering activity, in violation of 18 U.S.C. §§ 1956 and 1957.

---
RICKY J. RAUCH, JR., SPECIAL AGENT
United States Secret Service

Sworn to and subscribed before me this 26th day of August, 2013.

---
ARIANA NEWMAN
Notary I.D. Number: 65433
My commission expires at death

AFFIDAVIT OF SA RICKY J. RAUCH, JR.    PAGE 8                                   Exhibit "A"