UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION NO. 13-5566 |
| v. | * | SECTION: "B" (4) |
| $100,641.06 U.S. CURRENCY, *et al.* | * | JUDGE LEMELLE |
| *   *   *   *   *   *   * | | MAGISTRATE ROBY |

**MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT**, through the undersigned Assistant United States Attorney, comes plaintiff, the United States of America, and, in opposition to Claimants' Motion for Summary Judgment[1] (Rec. Doc. 8), respectfully submits as follows.

**FACTUAL AND PROCEDURAL BACKDROP**

The complete factual and procedural backdrop, leading up to the filing of the subject motion for summary judgment (Rec. Doc. 8), is more fully chronicled in the memorandum in support of the plaintiff's Motion to Strike and is hereby adopted and incorporated herein as if copied *in extenso.* Fed. R. Civ. P. 10(c). On the same day she filed the untimely answer which is (part of) the subject of the Government's pending[2] Motion to Strike (Rec. Doc. 9), claimant, Darnay Thibodaux, filed the instant Motion for Summary Judgment (Rec. Doc. 8) pursuant to Fed. R. Civ. P. 56. There has been no Scheduling Conference in the case, and no Scheduling

---

[1] The motion, which was originally submitted on behalf of Darnay Thibodaux, has since been adopted by Calvin Thibodaux, as well. Rec. Doc. 16.

[2] The Motion to Strike (Rec. Doc. 9) was noticed for submission on September 3, 2014. Rec. Doc. 9-1. Accordingly, the motion is presently under submission; and, were the Court to grant the Motion to Strike, the subject motion would be rendered moot.

Order has been issued. Fed. R. Civ. P. 16(b). In light of same, no formal discovery has been undertaken.[3]

## SUMMARY OF THE ARGUMENT

The Claimants-Movants suggest that, over the course of over 2 years and for 4-8 hours each day, Darnay Thibodaux provided extensive care, including cooking, cleaning, and bathing for her elderly neighbor, Sidney Dobronich. Rec. Doc. 8-2 (Statement of Uncontested Material Facts), at ¶¶ 7-9. Further, though they seemingly wanted nothing in return for these services, the Thibodauxs aver that Mr. Dobronich, who is now deceased, rewarded them for their dutiful service and their supposed commitment to keep him out of any type of assisted living situation. *Id.* at ¶ 11. Conversely, the United States, nonmovant herein, respectfully submits that the competent evidence of record, at the very least,[4] calls into question the duration and nature of service provided, the motive behind the Thibodauxs' relationship with Mr. Dobronich, and manner in which the Claimant's came to exercise dominion over Mr. Dobronich's assets. As noted in the Memorandum in Support of the Motion to Strike (Rec. Doc. 9-1), there are multiple civil suits and one criminal matter pending in the 22nd JDC, Parish of St. Tammany, over those very issues.

---

[3] Clearly, the undersigned has been privy to the information adduced by law enforcement during the underlying investigation; however, in light of the posture of both this matter and the underlying criminal case in state court, he has not contacted these individuals. While it is respectfully submitted that there is no dearth of deficiencies presented by the subject motion (Rec. Doc. 8), should the Court disagree, pursuant to Fed. R. Civ. P. 56(d)(2), the United States would request the opportunity to depose certain witnesses described herein, including: Buffy Lynn Crawford Singletary, Janet Singletary, and Christina Penton. Additionally, the Government would request the opportunity to depose Darnay Thibodaux in order to traverse the affidavit (Rec. Doc. 8-4) which she has furnished in support of the subject motion.

[4] In point of fact, because it is only their self-serving attestations, which, as discussed *infra*, they have contradicted, support their current version of the "facts," the Government respectfully submits that, for the same reasons more fully articulated herein, judgment independent of the motion and in the nonmovant's favor is appropriate in this matter. Fed. R. Civ. P. 56(f)(1). Additionally, and only should the Court not find the motion to strike to be well-founded, as the Court has previously observed, because this is a bench trial, "the presiding judge 'has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" *Lejeune v. Production Services Network U.S., Inc.*, 11-2482, 2014 WL 3587495, *1 (E.D. La. July 21, 2014) (quoting *U.S. Fid. & Guar. Co. v. Planters Bank & Trust Co.*, 77 F.3d 863, 866 (5th Cir. 1996)).

Pretermitting discussion as to whether the Claimants, Darnay and Calvin Thibodaux ("the Claimants" or "the Thibodauxs"), can survive the deficiencies chronicled in the Government's Motion to Strike[5] (Rec. Doc. 9), Claimants' Motion for Summary Judgment (Rec. Doc. 8), at best, asks the Court to ignore the positive, competent evidence of record. Rec. Doc. 1, at pp. 7-14 (Affidavit of SA Ricky Rauch). To the extent that they make *any* effort to confront the "allegations [which] are based on the affidavit of Special Agent Ricky Rauch of the United States Secret Service," claimants have done nothing more than attempted to refute SA Rauch's affidavit with their own contradictory version of the facts or to offer competing interpretations of the underlying, foundational documents.[6] Because their motion accomplishes nothing more than highlighting the fundamental disagreements between the parties, Claimants fall woefully short of demonstrating to the Court that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## I. Standard Applicable under Fed. R. Civ. P. 56

The standard applicable to a Motion for Summary Judgment is frequently dispensed with by movants as rote; however, given the nature of the instant request—and the extraordinary leaps which the movants herein ask the Court to take—the standard remains noteworthy.

> The purpose of Rule 56 is to "enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990). * * * If the moving party fails to meet this initial burden, the motion must be denied regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-2554.

---

[5] *See* Supplemental Rule G(8)(c)(ii)(A) (requiring that the Motion to Strike "be decided before any motion by the claimant to dismiss the action").

[6] For instance, aside from the contradictory affidavit of Darnay Thibodaux (Rec. Doc. 8-4), Claimants offer exhibits which are already referenced in SA Rauch's affidavit; however, they seek to have to Court accept same at face value and in a vacuum.

3

*Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994).

In affirming the denial of a motion for summary judgment on the issue of qualified immunity, the Fifth Circuit recently held: "As the Supreme Court has recently reaffirmed, 'in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Luna v. Mullenix*, --- F.3d ---, 2014 WL 4251122, * 3 (5th Cir. 2014) (quoting *Tolan v. Cotton*, --- U.S. ---, ---, ---, 134 S.Ct. 1861, 1863, 188 L.Ed.2d 295 (2014).

In the instant matter, the claimants-movants have not attempted to establish a *prima facie* case, attacking any one theory of the Government's civil forfeiture case. Rather, the Thibodauxs make the global assertion that they had permission/authority to undertake all of the underlying steps which led to their dominion over the *in rem* defendant assets. However, what they fail to appreciate is that there is already sufficient record evidence to defeat their motion. *See, e.g.*, Rec. Doc. 1, at pp. 7-14, (Affidavit of SA Rauch). Therefore, the protection afforded by *Lujan* (and of obtaining "at least one sworn averment") is inapposite, as same was furnished contemporaneously with the filing of the Complaint (Rec. Doc. 1). *Lujan*, 497 U.S. at 888.

## II.   Claimants' Motion is Predicated upon Immaterial and/or Contested Facts.

Because the captioned matter was filed pursuant to Supplemental Rule G of the Federal Rules of Civil Procedure, it was both verified under penalty of perjury, as required by Supplemental Rule G(2)(a), and accompanied by a detailed affidavit in support. Rec. Doc. 1.[7] The United States respectfully submits that the relief which the Claimants now seek is barred by the plain language of Fed. R. Civ. P. 56.

---

[7] It is noted that the Complaint, Verification, and Affidavit of SA Rauch all appear at Rec. Doc. 1. The Affidavit of SA Rauch, as referenced herein, is found at Rec. Doc. 1, pp. 7-14.

4

As previously noted, the crux of Claimants' position[8] is that all of the steps taken by which they allegedly obtained ownership or control over Sidney Dobronich's assets (including the *in rem* defendants herein) or estate (*i.e.*, the "power of attorney" and "will") were duly authorized. To that end, Ms. Thibodaux has averred under penalty of perjury—though she has yet to be subject to cross-examination—each and every one of the following transactions and/or transfers was done with his full knowledge and permission.

- February 15, 2013, Mr. Dobronich executed a last will and testament, designating the Claimants as the sole beneficiaries and executor/executrix of his estate.

- February 15, 2013, Mr. Dobronich executed a power of attorney in favor of Ms. Thibodaux.

- February 15, 2013 – March 14, 2013, Claimants transferred $334,000 from Mr. Dobronich's investment account.

- February 15, 2013, Mr. Thibodaux purchased a 2001 Chevrolet Silverado pickup truck for his personal use.

- February 20, 2013, Ms. Thibodaux purchased a 2013 Nissan Altima for her personal use.

- March 11, 2013, the Claimants purchased a 2012 Kubota Tractor.

- March 11, 2013, the Claimants purchased a parcel of land, bearing municipal address 290660 Ellis Drive, Bogalusa, LA 70427.

- March 15, 2013, the Claimants, having already made a substantial deposit, attempted to purchase a 2013 Rockwood Camper from Berryland Campers.

Rec. Doc. 8-4 (August 18, 2014, Affidavit of Darnay Thibodaux), at ¶¶ 14-21.

To read Ms. Thibodaux's affidavit—or the substantially similar, though inaptly named, Statement of Uncontested Material Facts (Rec. Doc. 8-2)—one would think that, perhaps, the Government was not aware of the existence of the aforementioned power of attorney, will, or

---

[8] The only affidavit filed by in support of the motion for summary judgment has been furnished by Darnay Thibodaux. Rec. Doc. 8-4. Presumably, Calvin Thibodaux's interest is that which arises "under the community property regime in the State of Louisiana." Rec. Doc. 8-2 (Statement of Uncontested Material Facts), at numbered ¶ 2. While same might well prove to be of no consequence herein, on or about September 4, 2014, Darnay Thibodaux filed a Petition for Divorce. *Darnay Thibodaux v. Calvin Thibodaux*, 22nd JDC, No. 2014-13965.

5

those other subsequent materials which purported to ratify *nunc pro tunc* the underlying property transfers. To the contrary, the Government is quite aware of these documents. However, because what is at issue in this case—and the underlying state civil actions as well as the criminal prosecution—is the manner in which the Claimants obtained these documents and what legal significance, if any, they have. Conversely, the Thibodauxs ask the Court to ignore the Affidavit of SA Rauch and to accept the papers at face value. The foregoing notwithstanding, no plausible explanation is offered as to why on March 18, 2013, during his interview with law enforcement, a confused (now deceased) "Mr. Dobronich denied giving permission to DARNAY THIBODAUX, or anyone else, to borrow money, handle his finances, or make any transactions on his behalf." Rec. Doc. 1, at p. 8.

### III. Claimants' Inconsistent Positions Undermine the Subject Motion.

In addition to the dueling affidavits now of record (Rec. Docs. 1 and 8-4), the Government notes that Claimants, themselves, have furnished contradictory statements of fact which render judgment as a matter of law inappropriate. In contradiction to their assertion that this matter is ripe for judgment as a matter of law, the United States offers the following examples of the Thibodauxs' own inconsistent statements and actions.

#### A. The Altima Purchase

As chronicled in SA Rauch's affidavit, Ms. Thibodaux purchased a 2013 Nissan Altima, which is one of the *in rem* defendants herein.

> c. On February 20, 2013, DARNAY THIBODAUX obtained a cashier's check in the amount of $26,000.00 payable to CALVIN THIBODAUX with "doctor bills" listed in the memo field. The check was endorsed and deposited on February 20, 2013, by Eddie Tourelle's Northpark Nissan in Covington, LA. The check was furnished for the purchase of a 2013 Nissan Altima sedan, which is registered to DARNAY THIBODAUX at 29145 Nell Drive, Sun, LA.

Rec. Doc. 1, at p. 9.

So, while Ms. Thibodaux now contends that the purchase was duly-authorized by Mr. Dobronich, back when she originally obtained a cashier's check, which was made payable to her husband, she seemed to feel the need to characterize these funds (in the memo line of the check) as being for "doctor bills" . . . as opposed to for "my new car." Similarly, within days of the purchase of a vehicle for herself, on February 13, 2013, and again on February 20, 2013, Ms. Thibodaux contacted Romano Investments for $30,000 wire transfers from Mr. Dobronich's investment account to his Capital One bank account, advising that the funds were needed in order to settle "medical expenses." Rec. Doc. 1, at p.7.

In addition to the facial contradiction presented by the above timeline, transfer of funds, and vehicle purchase, during their March 27, 2013, interview with law enforcement, the Thibodauxs gave yet another version of the alleged sequence of events. Specifically, when asked whether any of Mr. Dobronich's money had actually been used to pay for his medical care, contrary to information previously provided, Ms. Thibodaux admitted that it had not. Rec Doc. 1, at p. 10. This time, she claimed, "The bills hadn't come in yet." Rec. Doc. 1, at p. 11.

**B. The Purchase of Real Property**

On March 11, 2013, Darnay Thibodaux obtained a cashier's check payable to Citizen's Savings Bank in the amount of $45,000.00, bearing "purchase of 29066 Ellis Drive" in the memo line. Rec Doc. 1, at p. 9. However, the public record does not reflect such a "sale." Rather, on March 13, 2013, the Claimants were purportedly the recipients/beneficiaries of an *inter vivos* donation from Buffie Lynn Crawford Singletary and Charles E. Singletary. *See* Rec. Doc. 1, at p.11; *see also*, March 13, 2013, "Act of Donation," recorded in St. Tammany Parish on March 15, 2013, and bearing Instrument Number 1892482 (attached hereto as Exhibit "A"). When the Notary Public to the aforementioned "Act of Donation," Janet Singletary, was questioned by law

enforcement, she recanted her earlier characterization of the transaction and stated that the Thibodauxs had instructed her to prepare the document as a "donation." Ms. Singletary further recalled a check being exchanged between the buyer and seller. Rec. Doc. 1, at p.12. If one were inclined to believe that the foregoing simulation might have an innocent explanation, such hope would be dashed by results of the ensuing investigation.

On April 3, 2013, law enforcement contacted Buffy Singletary, the donor/seller in the aforementioned "Act of Donation." Ms. Singletary stated unequivocally that the transaction was, in fact, a cash sale. Rec. Doc. 1, at p.12. Calvin Thibodaux told Ms. Singletary that the purchase money came from a "loan;" however, it appears that Ms. Thibodaux was not privy to that version of the story, as she later told Ms. Singletary that the money was from an inheritance from her grandmother's recent death. *Id.* After the execution of a search warrant at her residence, though, Ms. Thibodaux asked Ms. Singletary to lie for her and to claim that she (Singletary) had previously met Mr. Dobronich. *Id.*

In a subsequent interview with law enforcement, Ms. Singletary gave consistent information but provided additional pertinent information. *Id.* Most significantly, Ms. Thibodaux advised Ms. Singletary that, with the assistance of a Rebecca Crawford's title company, the transaction would be documented as a donation. *Id.* Janet Singletary, the Notary Public on the Act of Donation, told Buffy Singletary that the reason for classifying this as a "donation" was that the Thibodauxs were concerned about the public records showing their involvement with a cash sale. *Id.* Thereafter, in the parking lot, Darnay Thibodaux handed Buffy Singletary $500 cash "for [her] trip." *Id.*

After the execution of a search warrant, as more fully chronicled in SA Rauch's affidavit, Darnay Thibodaux asked Buffy Singletary, via text message, to corroborate her story. Rec Doc.

1, at pp. 12-13 (April 2, 2013, text message from Darnay Thibodaux to Buffy Singletary requesting: "Come over right after school just tell them the truth me an u went to mr Sidney's house an he said it was fine to buy the house its no big deal were not lying an got the papers to prove it" [sic]). Buffy Singletary further consented to placing several monitored, recorded telephone calls to Darnay Thibodaux, wherein she advised Ms. Thibodaux that she was uncomfortable lying to law enforcement. Rec. Doc. 1, at p. 13. Ms. Thibodaux responded, "I would do it for you." *Id.* Finally, when Ms. Singletary expressed similar reservations to Calvin Thibodaux, he bluntly responded that he would appreciate it if she lied. *Id.*

### C. Efforts *Ex Post Facto*

Having been questioned by law enforcement and having been informed that Mr. Dobronich denied giving them permission to take his money or administer his affairs, the Thibodauxs went back to Mr. Dobronich's hospital room on that very same day, March 27, 2013. Rec. Doc. 1, at p.11. With the assistance of a personal friend/notary public/justice of the peace, Rebecca Crawford, the Claimants presented Mr. Dobronich with a handwritten, completed affidavit, which contradicted his interview with law enforcement. *Id.* The affidavit (Rec. Doc. 8-5), which was clearly not written[9] by Mr. Dobronich, further suggested that Mr. Dobronich did not wish to press charges against the Thibodauxs. *Id.*

### IV. Independent Witnesses Fail to Corroborate the Tale as Told.

In the preceding section regarding the Thibodauxs' vacillating position, the United States referenced statements by numerous factual witnesses who have contradicted the Claimants' current position. In addition to that which is set forth *supra*, Buffy Singletary has also disputed

---

[9] *See* Rec. Doc. 1, at p. 11, noting that Rebecca Crawford admitted that, upon the Thibodauxs' request which was allegedly in response to the advice of criminal counsel, she prepared the handwritten affidavit at issue. She noted that, though Mr. Dobronich read and signed the document without question, he did not seem to be as alert as in her previous visit and that he appeared to be in pain. *Id.*

the length of time for which Ms. Thibodaux might have been rendering services for Mr. Dobronich. While Ms. Thibodaux avers that he had been caring for Mr. Dobronich for over two years before the subject property transfers, Ms. Singletary told law enforcement that she believed it had been a matter of months. Rec. Doc. 1, at p. 13. That fact alone might appear to be of dubious significance; but the timeline becomes all the more pertinent when one considers the information furnished by Christina Penton, Darnay Thibodaux's daughter.

The Government first learned of Ms. Penton and the pertinent information she possessed during law enforcement's interview of Buffy Singletary. Rec Doc. 1, at p. 13 (wherein Ms. Singletary relayed Ms. Penton's concern that her mother was "stealing an old man's money"). In light of same, on April 4, 2013, case agents interviewed Ms. Penton. *Id.* Ms. Penton advised that, on or near the end of January of 2013, while cleaning Mr. Dobronich's home, her mother had located a bank statement and learned that Mr. Dobronich had approximately $800,000 in his bank account. *Id.* Shortly thereafter, Ms. Thibodaux called her daughter, Ms. Penton, to ask questions about pain pills and other types of medication. *Id.* It is this discovery and the corresponding timeline which casts this matter in a far more nefarious light.

## CONCLUSION

The independent witness testimony, and the materials referenced above suggest a far more likely scenario than that which movants have posited. After a short duration of assisting Mr. Dobronich—with unknown motives—Darnay Thibodaux found a slip of paper suggesting that, to her surprise, her elderly neighbor had (liquid) assets of approximately $800,000. Within approximately two weeks, and while he was then in the hospital, Darnay Thibodaux had given Mr. Dobronich "a bunch of paperwork to sign," including what we now know to be a "Last Will and Testament" (Rec. Doc. 8-6) and "general power of attorney." Rec. Doc. 1, at p. 8. Wasting

no time, within 30 days of obtaining this apparent authority, the Thibodauxs went on a lavish spending spree, amassing, *inter alia*, the *in rem* defendants herein.

The Claimants' version of what transpired is contradicted by physical evidence and by numerous witnesses who have no financial interest in these proceedings. Their renditions as to what transpired have been mercurial and, at times, have been inconsistent as between the two of them. The curious steps they took to conceal the nature of their activities belie their assertion that Mr. Dobronich vested them with full authority to undertake these transfers and to make these purchases . . . despite the fact that Mr. Dobronich personally denied this arrangement. Accordingly, the Claimants have not only failed to satisfy their own burden under Fed. R. Civ. P. 56(a), but they have artfully demonstrated why the contrary result under Fed. R. Civ. P. 56(f)(1) is appropriate under these circumstances.

**WHEREFORE**, for the foregoing reasons, plaintiff, the United States of America, prays that the Claimants' Motion for Summary Judgment (Rec. Doc. 8) be denied and that Judgment be rendered in its favor.

Respectfully submitted,

KENNETH ALLEN POLITE, JR.
UNITED STATES ATTORNEY

*/s/Andre J. Lagarde*
ANDRE J. LAGARDE (# 28649)
Assistant United States Attorneys
650 Poydras St., Suite 1600
New Orleans, Louisiana  70130
Telephone:  (504) 680-3009
Facsimile: (504) 680-3174
andre.lagarde@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served in accordance with the Court's ECF rules this 9th day of September, 2014.

                                        */s/ Andre J. Lagarde*
                                        ANDRE J. LAGARDE
                                        Assistant United States Attorney