UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                        CIVIL ACTION

VERSUS                                          NO. 13-5566

$100,641.06 U.S. CURRENCY, ET AL.               SECTION "B"(4)

ORDER AND REASONS

**Nature of the Motions and Relief Sought**

There are several motions before the Court. The first, is a Motion to Strike Claim and Answer to Complaint by the United States. (Rec. Doc. No. 9). An opposition to this motion was filed by Calvin Thibodaux and Darnay Thibodaux. (Rec. Doc. No. 14). The second, is a Motion for Summary Judgment of Claimant by Darnay Thibodaux. (Rec. Doc. No. 8). The United States filed a response in opposition. (Rec. Doc. No. 20). Claimants filed a reply (Rec. Doc. No. 28) and the Government filed a surreply (Rec. Doc. No. 26). The third, is a Motion for Summary Judgment of Claimant by Calvin Thibodaux, adopting and incorporating all arguments from the foregoing motion for summary judgment. (Rec. Doc. No. 16). The United States did not file an opposition. Accordingly,

**IT IS ORDERED** that the Motion to Strike (Rec. Doc. No. 9) is **GRANTED** in part and **DENIED** in part. **IT IS ORDERED** that the Motions for Summary Judgment (Rec. Docs. No. 8, 16) are **DENIED**.

1

Claimants are hereby placed on notice of the Court's intention to enter summary judgment in favor of the United States *sua sponte* <u>unless they are able to show cause otherwise as directed below</u>.

**Procedural History and Facts of the Case**

This *in rem* forfeiture action arises out of an investigation into elder exploitation. On March 26, 2013, law enforcement became aware that a caretaker and her husband, via power of attorney and other mechanisms, were defrauding their neighbor, a hospitalized elderly man named Sidney Dobronich ("Mr. Dobronich" or "Dobronich").

Law enforcement contacted Romano Investments and Insurance ("Romano Investments"), with which Mr. Dobronich had a large amount of money invested into a brokerage account. For two years, Romano Investments had been wiring a monthly electronic deposit of $1,200 to Mr. Dobronich's Capital One bank account. On February 13, 2013, Romano Investments was contacted by Darnay Thibodaux ("Darnay"), who identified herself as Mr. Dobronich's neighbor and caretaker, claimed to have power of attorney, and requested $30,000 to settle his medical expenses.

On February 20, 2013, Darnay presented a power of attorney and last will and testament to Romano Investments, showing that she had full authority and that all of Mr. Dobronich's assets

were being willed to her upon his death. Darnay requested an additional $30,000 transfer to the Capital One account for medical bills.

On March 5, 2013, Darnay contacted Romano Investments and requested a transfer of $179,000 to the Capital One account for the purchase of a home. On March 11, 2013, Darnay called again, requesting an additional $95,000 for closing costs. The brokerage firm reached out to Mr. Dobronich's family, prompting an investigation.

On March 13, 2013, Darnay deposited $100,000 into her husband Calvin Thibodaux's Resource Bank account. On March 19, 2013, Calvin wrote a check to draw from his account $17, 697.93 to finalize the purchase of a Rockwood travel trailer. Cash payments totaling more than $23,000 were also made to finalize this purchase. When the check could not be deposited by the retailer, Berryland Campers, a refund check in the amount of $19,000 was issued payable to Calvin Thibodaux.

On March 18, 2013, law enforcement met with Mr. Dobronich, who denied giving permission to Darnay to borrow money, to handle his finances, or to make any transactions on his behalf. Mr. Dobronich did not recall making any large withdrawals from the brokerage account other than the $30,000 to settle medical

bills. He did not recall granting power of attorney; however, recalled that Darnay gave him "a bunch of paperwork."

After adding herself to Mr. Dobronich's bank account via power of attorney, from February 15, 2013 to March 15, 2013, Darnay made withdrawals and debits from the bank account, amounting to more than $334,000. Law enforcement obtained Mr. Dobronich's Capital One bank account records and determined that most of the money had been withdrawn in cash or used to purchase large items, including vehicles (Nissan Altima sedan and Chevrolet Silverado truck), a tractor and real estate. None of the money was used for the alleged medical expenses or were purchases attributable to Mr. Dobronich.

On March 27, 2013, law enforcement seized from the Thibodaux residence: the Nissan Altima registered to Darnay; the Chevrolet truck registered to her husband Calvin; the tractor; and, Mr. Dobronich's wallet.

On June 5, 2013, Darnay and Calvin Thibodaux were charged with Exploitation of the Infirmed in violation of La. Rev. Stat. § 14:93.4.[1] The Thibodauxs were arraigned on felony charges and entered pleas of not guilty on June 12, 2013.

---

[1] *See State of Louisiana v. Thibodaux*, 22nd JDC, Docket No. 534840, Div. "C." Complainants (family) also opened a civil suit regarding the underlying fraud and exploitation, *Forrest Dobronich, et al. v. Darnay Thibodaux*, et al. 22nd JDC, Civ. No. 2013-11784.

On October 26, 2013, the United States filed the instant Forfeiture *In Rem* action against: $100,641.06 U.S. Currency seized from Resource Bank account, number: 1133164, in the name of Calvin Thibodaux; $20,800 U.S. Currency seized from Berryland Campers for the purchase of a 2013 Rockwood Trailer on the basis of the refund check; 2013 Nissan Altima; 2001 Chevrolet Silverado Pickup Truck; and, 2012 Kubota Tractor with Parker Trailer.

The Court now reviews the law, contentions and alleged facts concerning the Government's Motion to Strike pursuant to Supplemental Rule G and Claimants' Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 56.

**Law and Analysis**

**I.   Motion to Strike**

The procedures for forfeiture in this case are governed by the Civil Asset Forfeiture Reform Act of 2000, Title 18 U.S.C. § 983 ("CAFRA"). Under CAFRA, a person claiming an interest in property named in a forfeiture complaint is directed to file a verified claim and answer according to the procedures set forth in the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"). 18 U.S.C. §983(4)(A).

The Government's Motion to Strike was filed pursuant to Supplemental Rule G(8)(c)(i)(A), which provides that such a motion is proper at "any time before trial" and may be based on the fail[ure] to comply with Rule G(5) or for lack of standing. Rule G(8)(c)(i). The Government alleges: (1) Claimants have failed to establish standing with regard to the Defendant Property; (2) Claimants have failed to adhere to Supplemental Rule G(5)(a) in submitting a claim; and, (3) that Claimants have failed to timely file an answer in accordance with Rule G(5)(b).

A. Article III Standing

Article III standing is at issue as the Government contends that Claimants have failed to sufficiently establish that they have standing to challenge the Government's *In Rem* Complaint. The claimant has the burden of establishing standing in forfeiture proceedings. To properly contest forfeiture, a claimant must have both Article III and statutory standing. *U.S. v. $1,000 in U.S. Currency seized from Inmate Account Number 230277*, No. 2:04-CV-1084JCM(LRL), 2014 WL 3928607 (D. Nev. Aug. 12, 2014). A claimant establishes Article III standing by demonstrating the existence of an injury through a showing of "either an ownership or lesser possessory interest in the property." *United States v. $114, 031.00 in U.S. Currency*, 284 F. App'x 754, 755-56 (11th Cir. 2008). In the absence of Article

III standing, there is no 'case or controversy' in the constitutional sense.

Here, the "Claim" (Rec. Doc. No. 5 at 1-3) is sufficiently specific regarding the nature of Claimants' interest in the Defendant Property at issue here. With regard to the currency seized from the bank account, Claimants state that Claimants are entitled to possess the funds "until the checks came in from the bank."[2] However, Claimants have disclaimed a possessory interest over the seized funds: "the day of seizure the checks came in from the bank."[3] Therefore, they have failed to state an unequivocal and continuing interest in the funds and have failed to carry the burden with regard to the same. *Cf. United States v. $133,420.00 in United States Currency*, 672 F.3d 629, 640 (9th Cir. 2012).

Claimants claim ownership over the "car, truck, and tractor," which "Mr. Sidney Dobronich notarized us to have these items." (Rec. Doc. No. 5 at 1). Claimants sufficiently establish how they came into ownership of the car, truck and tractor, and claim continued ownership. Further, the vehicles are registered in their names. Claimants have established Article III standing to challenge the forfeiture of the Nissan Altima, Chevrolet Silverado pickup truck and the Kubota Tractor and trailer.

---

[2] Rec. Doc. No. 5 at 1.
[3] Rec. Doc. No. 5 at 1.

B. Statutory Standing

Statutory standing is also at issue here because the Government's Motion to Strike is based on Claimants' failure to adhere to Supplement Rule G(5). A claimant perfects statutory standing through compliance with the procedures set forth in Supplemental Rule G(5)(a) and (b). *See United States v. One 1985 Cadillac Seville*, 866 F.2d 1141, 1148 (9th Cir. 1989). A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. Rule G(5)(a)(i). The claim must: (a) identify the specific property claimed; (b) identify the claimant and state the claimant's interest in the property; and, (c) be signed by the claimant under penalty of perjury. Rule G(5)(a)(i)(A)-(C). A claimant must serve and file an answer to the complaint within 21 days after filing the claim. Rule G(5)(b).

Strict compliance with Supplemental Rule G(5) is required. *See e.g. U.S. v. 2006 Chevrolet Corvette*, No. 12-2492, 2013 WL 3832690, at * 1 (E.D. La. July 23, 2013); *U.S. v. $15, 701.97 U.S. Currency*, No. 09-3437, 2010, WL 3418246, at * (E.D. La. Aug. 23, 2010); *United States v. $21,044.000 U.S. Currency*, No. 97-2994, 1988 WL 213762, at *2 (E.D. La. Apr. 30, 1998); *United States v. $31,000.000 U.S. Currency*, No. 90-1829, 1990 WL 163610, at *1 (E.D. La. Oct. 22, 1990); *United States v. $288, 914 in United States Currency*, 722 F. Supp. 267 (E.D. La. 1989).

Failure to comply with the foregoing requirements leaves a claimant without standing to challenge the forfeiture.

The Government's Complaint was filed August 26, 2013.[4] In accordance with Fifth Amendment due process and Rule G(4)(b)(ii)(A)-(D), on August 30, 2013, the Government sent direct notice to Claimants, individually, via certified mail and regular mail.[5] The notice contained the date and explicit instructions on how Claimants were required to respond.[6] Both Claimants signed and confirmed receipt.[7]

Darnay and Calvin Thibodaux have complied with Rule G(5)(a). Claimants have submitted as a Claim the 'Seized Asset Claim Form' from the administrative proceedings in this matter.[8] The forms identify the specific property claimed and identify both claimants and their interest in the property. The issue is whether the 'Attestation and Oath' and Claimants signatures thereunder suffice under Rule G(5)(a)(i)(C).[9] The Court finds that the documents were signed by both Claimants under penalty of perjury, consistent with the simple requirement, and

---

[4] Rec. Doc. No. 1.
[5] Rec. Doc. No. 9-1 at 1-4.
[6] Rec. Doc. No. 9-1 at 1-4.
[7] Rec. Doc. No. 9-4 at 1, 2.
[8] Rec. Doc. No. 5 at 2.
[9] Attestation and Oath: I attest and declare under penalty of perjury that my claim to this property is not frivolous and that the information provided in support of my claim is true and correct, to the best of my knowledge and belief.

A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 U.S.C. §§ 1001 AND/OR 1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.

constitutes a Claim under Rule G(5)(a). The Rule does not require that separate claims be submitted for administrative and judicial proceedings.

However, Claimants have failed to comply with Rule G(5)(b) and this is fatal to their ability to establish statutory standing. Claimants timely submitted a claim on September 25, 2013[10]; therefore, answers were due October 15, 2013. However, Darnay Thibodaux did not file an Answer until August 18, 2014.[11] After the filing of the Government's Motion to Strike, Calvin Thibodaux filed an Answer on August 19, 2014.[12] Both answers were filed nearly a year late, and as such are untimely under Rule G(5)(b).

Claimants contend that the answers are timely, as no judgment or entry of default had been entered in favor the Government.[13] However, Supplemental Rule G(5) does not contemplate this prerequisite to Claimants' obligation to establish standing to contest forfeiture by timely filing a claim and answer. Moreover, the case law contravenes this argument. *See e.g. U.S. v. Approximately $141, 932.00 in U.S. Currency*, No.1:04-cv-6743LJOTAG, 2008 WL 190878, at *9 (E.D.

---

[10] Rec. Doc. No. 5.

[11] Rec. Doc. No. 7.

[12] Rec. Doc. No. 10.

[13] On August, 21, 2014, the Clerk of Courts granted the Government's Motion for Entry of Default. (Rec. Doc. No. 12).

Cal. January 18, 2009)(granting motions to strike answer and directing clerk of court to enter default judgment); *U.S. v. $5,277.00 U.S. Currency*, No. 12-CV-6528, 2013 WL 2405733, at *2 (W.D. N.Y. June 5, 2013)(granting motion to strike but denying without prejudice motion for default judgment).

Case law makes clear that the failure to file an answer before the prescribed deadline precludes the claimant from attaining statutory standing. *See e.g. U.S. v. 2006 Chevrolet Corvette*, 2013 WL 3832690, at * 2. Thus, in this case the Motion to Strike must be granted, unless the court construes Claimants' September 25, 2013 claim as both a claim and an answer. *U.S. v. Ninety Six Thousand Three Hundred Seventy Dollars in U.S. Currency*, No.3:14-cv-356-WHA, 2014 WL 4274352 at *2 (M.D. Ala. Aug. 29, 2014).

A court has discretion in appropriate circumstances to depart from the strict construction required by Rule G. The Court may excuse a claimant's procedural default in the "appropriate circumstances" or where certain mitigating factors are present. *United States v. $15,701.97*, 2010 WL 3418246, at *2 (E.D. La. 2010); *U.S. v. $48,000 U.S. Currency*, No. 06-10952, 2007 WL 1467158, at *3 (E.D. La. May 18, 2007). However, Claimants fail to identify any special or extenuating circumstances that warrant relaxation of the Supplemental

Rules. Moreover, Rule G(5)(a) and (b) require the separate filing of a claim and answer.

Additionally, Claimants' "failure to present any evidence demonstrating a good faith attempt to file an [answer] on time, detrimental reliance on government misinformation, or expense of considerable resources preparing this case for trial," weighs heavily in the Court's decision to not exercise its discretion. *United States v. $2,857.00*, 754 F.2d 208, at *4 (5th Cir. 1985).

Accordingly,

**IT IS ORDERED** that the Government's Motion to Strike for Lack of Standing (Rec. Doc. No. 9) is **GRANTED** in part and **DENIED** in part, without prejudice to reurge.

**IT IS ORDERED** that Government's Motion to Strike Claim of Darnay and Calvin Thibodaux (Rec. Doc. No. 5) is **DENIED.**

**IT IS FURTHER ORDERED** that the Government's Motion to Strike Answers of Darnay and Calvin Thibodaux (Rec. Docs. No. 7, 10) is **GRANTED.** Claimants lack standing to challenge the United States' forfeiture of the Defendant Property in this action. The Court separately addresses Claimants' motions for summary judgment

II.   **Motions for Summary Judgment**

A. Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 749 (5th Cir. 2002). A genuine dispute of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R. Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013).

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp.,* 477 U.S. at 322-23. In this regard, the nonmoving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Contogouris v. Westpac Resources*, 856 F.Supp. 2d 846, 850 (E.D. La. 2012)(*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The "obligation of the nonmoving party is particularly strong when the nonmoving party

bears the burden of proof." *Hughes, v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995).

### B. Civil Forfeiture under 18 U.S.C. §§ 981 and 983

The United States claims that the Defendant Property are traceable proceeds of wire fraud and bank fraud obtained in violation of 18 U.S.C. §§ 1343 and 1344, respectively, and 1349 (attempt or conspiracy); therefore, the property is subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 981(a)(1)(D).

The United States alleges that, in addition to being involved in transactions illicit wire and bank transactions, the *in rem* Defendant Properties were involved in transactions or attempted transactions of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B) and 1956(h), as well as § 1957 (prohibiting unlawful conduct as defined under 18 U.S.C. § 1962, Racketeer Influenced and Corrupt Organizations Act), subject to forfeiture under 18 U.S.C. § 981(a)(1)(A).

Title 18 U.S.C. § 981(a)(1)(A), (a)(1)(C), and (a)(1)(D), respectively, provide that: "[a]ny property, real or personal" is subject to forfeiture to the United States if, involved in a transaction in violation of Section 1956; constitutes or is derived from proceeds traceable to a violation of Section 1344;

or represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of Section 1343. "Proceeds" is defined as "property of any kind obtained, directly or indirectly, as the result of the commission of the offense giving rise to forfeiture and any property traceable thereto..." 18 U.S.C. § 981(a)(1)(G)(2).

To be entitled to forfeiture under CAFRA, the Government must establish by a preponderance of the evidence that "the property is subject to forfeiture...." *Id*. § 983(c)(1). The Government may use evidence gathered after the filing of a complaint for forfeiture to establish that property is subject to forfeiture. *Id*. § 983(c)(2). Further, if the Government's theory is that the property was involved in the commission of a criminal offense, the Government must establish a "substantial connection" between the property and the offense. *Id*. § 983(c)(3).

*Whether the Defendant Property is Forfeitable*

<u>Fraud Element</u>

According to Claimants: (1) Dobronich's will reflects his desire to ensure the financial security of the Thibodauxs in return for Darnay continuing to perform care-giving services for him; and (2) Dobronich granted access and authority over his

investment account as he was interested in the development and management of rental property with the Thibodauxs.

Claimants contend that the United States cannot meet its burden of proof that all property seized was transacted without Mr. Dobronich's full knowledge and authorization.[14] Therefore, they claim, the United States cannot prove any violation of Title 18 §§ 1956, 1343 and 1344. Essentially, Claimants argue that the Government cannot satisfy the fraud element of §§ 1344 (Bank Fraud) and 1343 (Wire Fraud), and based on the foregoing, argue that therefore, the Government cannot satisfy the requirements under § 1956 (money laundering) or § 1957 (engaging in monetary transactions in property derived from specified unlawful activity).

As Claimants acknowledge engaging in monetary transactions that involved moving $334,000 from the Dobronich brokerage and Capital One bank accounts for transfer to personal bank accounts, and for the purchase of the Nissan Altima, the Chevrolet Silverado truck, and the tractor, as well as the attempted purchase of a trailer with these funds, it follows that a substantial connection exists between the Defendant

---

[14] Claimants contend that Mr. Dobronich sought to secure their financial security in return for Darnay continuing to perform care-giving services for him; that Mr. Dobronich decided to execute a will leaving his property to Claimants; and, that he decided to execute a power of attorney to facilitate the acquisition and maintenance of rental property to ultimately establish rental income for Claimants and Mr. Dobronich.

Property and the alleged offenses.[15] Therefore, the analysis here is a simple one-step analysis into the fraud element and whether the Government can establish by a *preponderance of the evidence* that Claimants obtained the property through fraud.

The fraud element is somewhat defined by 18 U.S.C. §1341, which provides, in relevant part: "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses...."

The issue is whether Dobronich had "full knowledge" of the transactions at issue and knowingly gave Claimants authorization to engage in the same. The Government and Claimants contrast sharply on this issue. Claimants support their position with a sworn and notarized affidavit, signed by Dobronich, attesting as follows:

> 1) He does not want to press charges against Calvin and/or Darnay Thibodaux for acting on his behalf with a Power of Attorney he executed in the presents [sic] of a Notary Public and two witness;
>
> 2) Anything purchased was with his consent and were authorized with his full knowledge;
>
> 3) Items such as, Kubota Tractor, a 4-wheeler, 2001 Chevy Pk, a 2013 Nissan Altima and property(s) [sic] were purchased with my knowledge; the money came from my account.[16]

---

[15] Rec. Doc. No. 8-1 at 4-5.
[16] Rec. Doc. No. 8-1 at 7.

The Government alleges that the affidavit was presented to Dobronich on March 27, 2013, while he was in the hospital, and in a fragile and vulnerable condition.[17] The Government supports this with the judicial determination, during state court civil proceedings that Dobronich was "incompetent to testify in these proceedings by way of deposition or trial testimony."[18] Further, during his interview with law enforcement on March 18, 2013, Dobronich denied giving permission to Claimants to borrow money, handle his finances, or make any transactions on his behalf.[19] Thus, there is serious question as to Dobronich's capacity to make the attestations proffered by Claimants.

The evidence shows that, on February 20, 2013, Darnay Thibodaux obtained a cashier's check in the amount of $26,000 payable to Calvin Thibodaux with "doctor bills" listed in the memo field; and, that the check was endorsed and deposited on the same day for the purchase of the Nissan Altima, a purchase Claimants contend Dobronich authorized.[20]

Further, on February 13, 2013, and again on February 20, 2013, Darnay contacted Romano Investments for $30,000 wire transfers from Dobronich's investment account to his Capital One

---

[17] Rec. Doc. No. 1 at 8.
[18] Rec. Doc. No. 26-1 at 1.  Forrest Dobronich, et al. v. Darnay Thibodaux and Calvin Thibodaux, Case No. 2013-11784.
[19] Rec. Doc. No. 1 at 11.
[20] Rec. Doc. No. 1 at 9.

bank account, advising that the funds were needed in order to settle "medical expenses."[21] However, Claimants admitted to law enforcement that no funds were put to medical care or expenses because "the bills hadn't come in yet."[22]

The Claimants contend that the basis for Dobronich's granting of power of attorney over his affairs and finances, as well as the bequest of all of his assets to the Thibodaux's, is the relationship that developed during Darnay's nursing care of Dobronich over the course of two years. However, there is evidence to the contrary and that Darnay only began caring for Dobronich several months before the transactions at issue.

Although, not the subject of the instant action, there is evidence to show that a $45,000 cashier's check (relating to Dobronich's funds) was obtained by Claimants and used to purchase real property from a third party. However, the sales documentation from this transaction lists the transaction as an Act of Donation, rather than a sales transaction. Further, there is no record of this transaction in the public record. The Government is prepared to show that the parties involved in this transaction made inconsistent statements as to the nature of the transaction for real property.

---

[21] Rec. Doc. No. 1 at 7.
[22] Rec. Doc. No. 1 at 11.

Based on the foregoing, the Court finds that Claimants have failed to settle the issues relating to Dobronich's full knowledge and complete understanding of the transactions at issue, specifically, how the funds from the brokerage account were being spent. The purported authorization proffered by Claimants to support their position is in serious question. For these reasons, summary judgment in favor of Claimants is inappropriate.

Further, the Court finds that, based on the evidence adduced by the Government, the Government can bear the burden of proof in establishing that the Defendant Property was obtained through 'false or fraudulent pretenses,' thus, subjecting the property to forfeiture proceedings under 18 U.S.C. § 981.

Accordingly,

**IT IS ORDERED** that the Motions for Summary Judgment (Rec. Docs. No. 8, 16) are **DENIED.** There is no evidence that the funds from Dobronich's brokerage account were used to settle Dobronich's medical bills, or were used toward any other legitimate purpose purportedly authorized by Dobronich, as opposed to the Government's well-documented use of the funds for Claimants' personal designs.

### III.  Notice of the Court's Intention to Enter Summary Judgment *Sua Sponte* in Favor of the United States

Based on the above, the Court is considering entry of summary judgment *sua sponte* in favor of the United States. It is well-settled that a district court may, in denying the moving party's motion for summary judgment, grant summary judgment *sua sponte* in favor of the non-movant. Fed. R. Civ. P. 56(c); *Washington v. Resolution Trust Corp.*, 68 F.3d 935, 939 (5th Cir. 1995); *Boudreaux v. Rice Palace*, No. 04-541, 2006 WL 3345198, at *7 (W.D. La. Nov. 15, 2006). Federal Rule of Civil Procedure 56 requires the prompt disposition of cases in the absence of any genuine issues of material fact for the court to consider.

As the Court is considering entering a *sua sponte* judgment, Claimants as the moving parties are entitled to ten-days' notice of this intention so that Claimants have fair opportunity to come forward with all of their evidence and make a response. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000).

New Orleans, Louisiana, this 4th day of December, 2014.

_____
UNITED STATES DISTRICT JUDGE